Filed 11/19/24; Modified and Certified for Partial Pub. 12/18/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CALIFORNIA RESOURCES PRODUCTION CORPORATION,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>ANTIOCH CITY COUNCIL et al.,<br><br>      Defendants and Respondents. | A168517<br><br>(Contra Costa County<br>Super. Ct. No. MSN21-2354) |
| CALIFORNIA RESOURCES PRODUCTION CORPORATION,<br>      Petitioner,<br><br>v.<br><br>SUPERIOR COURT OF CONTRA COSTA COUNTY,<br>      Respondent;<br><br>CITY OF ANTIOCH et al.,<br>      Real Parties in Interest. | A168558<br><br>(Contra Costa County<br>Super. Ct. No. MSN21-2354) |

In these consolidated proceedings, California Resources Production Corporation (CRPC) challenges the decision of the City of Antioch (City) and the Antioch City Council (City Council) to deny its application to extend the

term of the franchise under which it operated a pipeline within the City's public right-of-way. CRPC contends the trial court erred in sustaining without leave to amend various causes of action alleged in several amended complaints. We find no error and therefore affirm the judgment entered in favor of the City Council and deny CRPC's petition for writ of mandate.

## BACKGROUND

CRPC owns and operates the Union Island Pipeline, through which natural gas is transferred from four gas fields to a transfer station in Contra Costa County. An 8.5-mile segment of the pipeline is located within the City's public right-of-way.

In January 1991, the City Council approved an ordinance granting a 25-year franchise to Union Oil Company of California for the 8.5-mile segment of the Union Island Pipeline (the Franchise Agreement). The ordinance granting the Franchise Agreement took effect in February 1991 and expired in February 2016. In February 2016, CRPC applied for a five-year extension of the Franchise Agreement. In December 2017, the City Council granted the extension by ordinance and extended CRPC's Franchise Agreement to February 7, 2021.

In February 2021, CRPC applied for a 10-year extension of the Franchise Agreement to February 7, 2031. In August 2021, the City Council considered and passed a resolution of intent to pass an ordinance extending the Franchise Agreement as requested. On September 28, 2021, however, following a public hearing, the City Council voted against CRPC's application. As a result of the City's denial of CRPC's application, the Franchise Agreement expired on February 7, 2021. The City issued a Notice of Termination of Franchise Agreement and ordered CRPC to discontinue the use of and abandon the 8.5-mile segment of the Union Island Pipeline.

2

In December 2021, CRPC filed a Petition for Writ of Mandamus and Complaint, and in May 2022, CRPC filed a First Amended Complaint. The City filed a Cross-Complaint, and later an Amended Cross-Complaint. CRPC's First Amended Complaint alleged causes of action for, among other things, (1) extraterritoriality and state law preemption; (2) federal law preemption; (3) writ of mandamus; (4) regulatory taking; and (5) declaratory relief. The City's causes of action against CRPC include trespass, ejectment, and declaratory relief.

In October 2022, the trial court sustained a demurrer by the City and the City Council to the above causes of action in the First Amended Complaint. CRPC was granted leave to amend as to all causes of action except for the causes of action for extraterritoriality and state law preemption and federal law preemption.

Thereafter, CRPC filed its Second Amended Complaint, which alleged causes of action for, among other things, (1) violation of equal protection; (2) deprivation of rights under section 1983 of title 42 of the United States Code; (3) writ of mandamus; (4) regulatory taking; and (5) declaratory relief. In February 2023, the trial court sustained with leave to amend demurrers to each cause of action by the City and the City Council.

In March 2023, CRPC filed its Third Amended Complaint, repleading four causes of action: (1) violation of equal protection; (2) deprivation of rights under section 1983 of title 42 of the United States Code; (3) writ of mandamus; and (4) declaratory relief. In May 2023, the trial court sustained demurrers by the City and the City Council to all causes of action without leave to amend.

Given the City's pending cross-complaint, the court entered a judgment of dismissal only as to the City Council. CRPC timely filed a notice of appeal

3

as to that judgment.  With regard to the resolution of its claims against the City, CRPC filed a petition for writ of mandamus challenging the rulings on the demurrers.  This court consolidated the appeal (A168517) and the writ petition (A168558) for all purposes.

## DISCUSSION

### I.     The Franchise Act of 1937

" 'A franchise is a privilege conferred upon an individual or a corporation for use of a sovereign body's property.' " (*Riverside County Transportation Com. v. Southern California Gas Co.* (2020) 54 Cal.App.5th 823, 857.)  Franchises are " 'created when a governmental agency authorizes private companies to set up their infrastructures on public property in order to provide public utilities to the public; i.e., when railroad, gas, water, telephone, or electric companies set up tracks, pipes, poles, etc. across the streets and other public ways of a city.  [Citations.]'  [Citation.] [¶] ' "[A] private utility's franchise in a public street is property created by contract[.]" ' " (*Id.* at p. 857.)

The Franchise Act of 1937 is codified at Public Utilities Code[1] section 6201 et seq. (hereafter the Franchise Act).  Under section 6202, "[t]he legislative body of any municipality may grant a franchise to any person, firm, or corporation, whether operating under an existing franchise or not, . . . to use, or to lay and use, pipes and appurtenances for transmitting and distributing gas or industrial gas for all purposes, . . . under, along, across, or upon the public streets, ways, alleys, and places within the municipality, upon the terms and conditions provided in this chapter."  Article 2 of the Franchise Act sets forth the procedure for the granting of a franchise:  After the applicant has submitted its application (§ 6231), "the legislative body of

---

[1] All undesignated statutory references are to the Public Utilities Code.

4

the municipality" in which the franchise is desired "may pass its resolution declaring its intention to grant the franchise applied for." (§ 6232.) The legislative body must then set and give notice of a public hearing on the franchise application. (§§ 6232, 6233.) "At any time not later than the hour set for the hearing of objections, any person interested may make written protest stating objections against the granting of the franchise. . . . At the time set for hearing objections the legislative body shall proceed to hear and pass upon all protests so made and its decision shall be final and conclusive, subject to the right of referendum of the people." (§ 6234.) Section 6234 continues, "If no protest in writing is delivered to the clerk up to the hour set for hearing, or such protests as are filed have been heard and determined by the legislative body to be insufficient, or have been overruled or denied, the legislative body may grant the franchise."

## II.    Standard of Review

Our review of the trial court's ruling on a demurrer is governed by well-settled principles. " '[O]ur standard of review is de novo, "i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." [Citation.]' [Citation.] ' " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " ' " (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.) Specifically, "a demurrer . . . does not admit the truth of allegations that challenged actions are arbitrary and capricious or an abuse of discretion." (*Building Industry Assn. v. Marin Mun. Water Dist.* (1991) 235 Cal.App.3d 1641, 1645.) " 'We affirm if any ground offered in support of the demurrer was well taken but find error if the plaintiff has stated a cause of action under any possible legal theory. [Citations.] We are not bound by the trial court's stated reasons, if any,

5

supporting its ruling; we review the ruling, not its rationale.' " (*Walgreen Co., supra,* 185 Cal.App.4th 424, 433.)

## III.  Equal Protection

"The federal equal protection clause (U.S. Const., 14th Amend.) and its California counterpart (Cal. Const., art. I, § 7, subd. (a)) provide that persons who are similarly situated with respect to the legitimate purpose of a law must be treated alike under the law.  [Citations.]  Equal protection challenges typically involve claims of discrimination against an identifiable class or group of persons.  The United States Supreme Court in *Village of Willowbrook v. Olech* (2000) 528 U.S. 562, 564 . . . (*Olech*), however, held that a plaintiff who does not allege membership in a class or group may state a claim as a ' "class of one." ' " (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 857 (*Las Lomas*).)  To state a "class of one" equal protection claim, the plaintiff must allege that "(1) the plaintiff was treated differently from other similarly situated persons, (2) the difference in treatment was intentional, and (3) there was no rational basis for the difference in treatment."  (*Id.* at p. 858.)

CRPC's Third Amended Complaint alleges that "[f]rom at least 1984 until 2020, the City has granted pipeline franchises, pipeline franchise extensions, or pipeline franchise transfers to similarly situated private entities to transport commodities, under similar terms and conditions and in accordance with the Franchise Act, through their pipelines situated in and along the City's public rights of way" and that "CRPC is the first and only pipeline owner or operator to be denied a franchise agreement by the City and such action was intentional, arbitrary discrimination against CRPC without any rational basis for such action."  The Third Amended Complaint alleged the following facts in support of its claim.  (1) In August 1987, the

6

City Council passed an ordinance granting a predecessor of Crimson Midstream LLC a pipeline franchise with a term of 40 years to construct, maintain, and operate an underground pipeline to transport natural gas, oil, petroleum, liquid fuel, hydrocarbon or chemical products, water, and other liquid or gaseous substances. (2) In April 1992, the City Council passed an ordinance granting Chevron U.S.A. Inc. a pipeline franchise with a term of 25 years to construct, maintain, and operate an underground pipeline for the transportation of oil, petroleum, gas, gasoline, and water or other hydrocarbon substances. In December 2017, the City extended that pipeline franchise for another 25 years. (3) In October 1984, the City Council passed an ordinance granting a predecessor of Calpine Corporation a pipeline franchise with a 40-year term to construct, maintain, and operate an underground pipeline to transport natural gas, oil, petroleum, liquid fuel, hydrocarbon or chemical products, and other liquid or gaseous substances. (4) In January 2020, the City Council passed an ordinance granting Praxair Inc. a franchise with a term of 15 years to transmit and distribute oxygen and nitrogen, including the maintenance and operation of pipelines to convey such liquids, gases, and vapors. (5) SFPP, a subsidiary of Kinder Morgan, maintains and operates a hydrocarbon pipeline through the City through a combination of easements and pipeline franchises granted by the City Council.

The trial court sustained the City's demurrer to the Third Amended Complaint on the ground, among others, that it failed to allege that the other pipeline operators were similarly situated. In doing so, the trial court carefully identified the material differences between CRPC and the other entities described in the complaint with regard to their operation of utility pipelines under franchises granted by the City. The trial court decision

7

reads, "To begin with, each of the four companies [Chevron, Calpine, Crimson and CRPC] that sought franchises for pipelines to carry hydrocarbon substances in the '80s and 90's was granted those franchises. Thus, at the initial stage, all companies were treated the same. Two of those franchises are still in effect. The two that needed to be renewed since their inception—[CRPC's] and Chevron's—were both renewed by the City on the same day: December 12, 2017. The only difference was that Chevron requested and received a 25-year extension (until 2042), while [CRPC] only asked for a 5-year extension (until 2021). Thus, until that point in time, all entities were treated equally; all had their initial franchise approved, and the two that sought extensions ha[d] those extensions approved. [¶] Since [CRPC] only requested a 5-year extension, its franchise was set to expire on February 7, 2021. Accordingly, it is the only company with a hydrocarbon substance pipeline alleged to have sought a franchise renewal since 2017 [] when both Chevron and [CRPC] had their franchises renewed. It is also the only company that has sought a second franchise renewal." With respect to Kinder Morgan, who operates its pipelines through subsidiary SFPP, the trial court explained that, although the Third Amended Complaint alleges the existence of a franchise, it fails to allege any terms or conditions of the franchise, rendering comparison impossible. Finally, with regard to Praxair, the trial court noted that the Third Amended Complaint alleged that Praxair's pipeline allowed transportation of oxygen and nitrogen, not " 'hydrocarbon substances.' "

CRPC contends that the allegation in the Third Amended Complaint that the other entities "are substantially similar to CRPC in that they are owners and operators of pipelines that transport commodities, including hydrocarbons and other substances" is sufficient to satisfy the similarity

8

requirement because it establishes that they are all entities eligible for franchises under the Franchise Act.  (See § 6202 [Franchise Act permits the City to "grant a franchise to any person, firm, or corporation, whether operating under an existing franchise or not" for "pipes and appurtenances for transmitting and distributing" various substances].)  CRPC argues further that it was impermissible at the pleading stage for the trial court to compare the details of the franchises granted, as contrasted with the entities to which the franchises were granted.

When a plaintiff seeks to prevail in a "class of one" equal protection case, "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain."  (*Neilson v. D'Angelis* (2d Cir. 2005) 409 F.3d 100, 105, overruled on different ground in *Appel v. Spiridon* (2d Cir. 2008) 531 F.3d 138, 139.)  For this inference to arise, "the level of similarity between [the plaintiff] and the persons with whom they compare themselves must be extremely high."  (*Squires v. City of Eureka* (2014) 231 Cal.App.4th 577, quoting *Neilson v. D'Angelis*, *supra*, 409 F.3d at p. 104; see also *Racine Charter One, Inc. v. Racine Unified Sch. Dist.* (7th Cir. 2005) 424 F.3d 677, 680 ["comparators must be '*prima facie* identical in all relevant respects,' [citation], or 'directly comparable to [plaintiff] in all material respects' " ].)

As CRPC notes, the persons compared must be " 'similarly situated' " for the purposes of the law challenged.  (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)  That means, however, that "the proponent of the equal protection violation must show that the parties with whom he seeks to be

9

compared have engaged in the same activity vis-à-vis the government entity without such distinguishing or mitigating circumstances as would render the comparison inutile." (*Cordi-Allen v. Conlon* (1st Cir. 2007) 494 F.3d 245, 251.) Contrary to CRPC's argument, the timing of the City's decisions and materials transported are material circumstances that must be similar in order to support an inference that the different treatment was the product of an improper rather than a legitimate government purpose. (*See, e.g., Bell v. Duperrault* (7th Cir. 2004) 367 F.3d 703, 707–708 [noting that the purportedly comparable individuals submitted applications for pier extensions at different times than the plaintiff, requested different kinds of extensions, or requested mere renovations as opposed to wholly new structures]; *Purze v. Vill. of Winthrop Harbor* (7th Cir. 2002) 286 F.3d 452, 455] [noting that "the allegedly similarly-situated individuals . . . requested different variances than the [plaintiffs] requested; submitted their plats [for a subdivision] during different time periods; and had their plat requests granted by different and previous Boards"].)

While the question of "[w]hether a comparator is similarly situated is usually a question for the fact-finder," dismissal at the pleading stage is appropriate where the complaint fails "to allege facts tending to show that it was similarly situated" to any other entity and, to the contrary, the pleadings show that the other identified entities "were different in certain material respects." (*LaBella Winnetka, Inc. v. Vill. of Winnetka* (7th Cir. 2010) 628 F.3d 937, 942; see also *Las Lomas, supra,* 177 Cal.App.4th 837 [affirming judgment entered on equal protection claim after entry of order sustaining demurrer].) As detailed by the trial court, the other franchise operators identified in the complaint were different in material respects. The approvals of applications that occurred years prior or involved transportation of

different materials do not give rise to an inference that the denial of CRPC's extension was irrational. To the contrary, as the City explains in its brief, "changes in public sentiment, political considerations, and other factors relevant to such major land use matters that reasonably change over the course of many years, as well as changes in the City Council's composition" all provide reasonable explanations for the alleged different treatment of CRPC's application of extension of its franchise.

CRPC disagrees that these differences are determinative in this case. It argues that, "[b]ecause there were no changes in the standards regarding the franchising of new or existing pipelines, the City's historic approval of natural gas use and pipelines would not vary. With respect to the allegations and claims made, there was no meaningful difference in the temporal disparities in the City's franchise decisions." CRPC overstates the allegations of its complaint. CRPC does not allege that the City Council applied set "standards" to reach its decision. Rather, the Third Amended Complaint alleges that the City "had no stated policy prohibiting the transportation of natural gas through the City, prohibiting the installation of new natural gas infrastructure within the public rights of way to provide natural gas to new developments in the City, or regarding the franchising or permitting of pipelines for the transportation of hydrocarbons or other commodities in the City." The absence of an express policy prohibiting something is entirely different from a policy permitting something pursuant to a set of standards.

We also reject CRPC's argument that the differences between the franchises operated by the various companies are immaterial because it "did not need to identify similarly situated pipeline franchises in the complaint" at all or include any of the details regarding their pipeline operations. *Geinosky*

11

*v. City of Chicago* (7th Cir. 2012) 675 F.3d 743, relied on by CRPC, is distinguishable. In that case, the court noted that where the plaintiff was alleging a class-of-one equal protection claim based on intentional differential treatment, specifically that the defendant issued him 24 bogus parking tickets in a fourteen-month period, a requirement that he "identify and describe" specific individuals who did not receive bogus parking tickets would not help distinguish between ordinary wrongful acts and deliberately discriminatory denials of equal protection. (*Id.* at p. 748.) In footnote 3, the court opined that "[e]ven in a case where a plaintiff would need to identify a similarly situated person to prove his case," the federal rules of procedure "do not require a plaintiff to identify specific comparators in a complaint." Subsequent authority, however, confirms that this rule applies only when the pleadings necessarily "exclude rational explanations for why local officials targeted them." (*Miller v. City of Monona* (7th Cir. 2015) 784 F.3d 1113, 1120.) Even under what the court describes as this "least demanding" pleading standard, "plaintiffs must allege that state actors lacked a rational basis for singling them out for intentionally discriminatory treatment." (*Id.* at p. 1121.) "It is not enough for a complaint to suggest an improper motive, for ' "[a] given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity." ' [Citation.] Thus, even at the pleadings stage, '[a]ll it takes to defeat [a class-of-one] claim is a *conceivable* rational basis for the difference in treatment.' " (*Ibid.*) Here, because the inference of intentional discriminatory treatment relies solely on the comparison with others, the complaint must allege facts demonstrating that the others are similarly situated.

Although CRPC states summarily that "the trial court should have allowed CRPC the opportunity to amend its complaint," it does not suggest how its complaint could be alleged to cure this defect. The Third Amended Complaint alleges that the City failed to respond to its public records request to obtain the City's franchise agreements related to Kinder Morgan, Inc., and CRPC argues that "[w]ithout the benefit of discovery, CRPC cannot be expected to fully assert facts concerning all the pipeline franchises the City granted for the use and transportation of natural gas or other hydrocarbon products." CRPC does not address, however, either the declaration submitted in support of the City's demurrer stating that it did not produce any franchise documents for Kinder Morgan in response to CRPC's public records request because they do not exist, or the City's request for judicial notice of documents showing that Kinder Morgan's subsidiary operates its pipeline under right-of-way agreements executed in 1991. Accordingly, the trial court did not abuse its discretion in sustaining the demurrer to this cause of action without leave to amend.

## IV.    42 U.S.C. § 1983

Title 42 of United States Code section 1983 provides that "[e]very person who," under the color of state law, deprives a person of their federal constitutional rights, such as equal protection of the laws, "shall be liable to the party injured in an action at law." Rather than conferring substantive rights, this section "provides 'a method for vindicating federal rights elsewhere conferred.'" (*Albright v. Oliver* (1994) 510 U.S. 266, 271.) "The 'two essential elements' to a claim under section 1983 are (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." (*Irwin*

13

*v. City of Hemet* (1994) 22 Cal.App.4th 507, 516.) Because CRPC's claim is based on an alleged violation of the Equal Protection clause, for the reasons discussed above, the demurrer was properly sustained as to this cause of action as well.

## V.     Traditional Mandamus

A party may seek relief by way of traditional mandamus " 'to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . .' (Code Civ. Proc., § 1085, subd. (a).) Thus mandate will lie to compel the performance of a clear, present and ministerial duty on the part of the respondent where the petitioner has a beneficial right to performance of that duty." (*Coachella Valley Unified School Dist. v. State of California* (2009) 176 Cal.App.4th 93, 113.) In addition, while a party may not invoke the remedy to force a public entity to exercise discretionary powers in any particular manner, "mandamus may also issue to correct the exercise of discretionary legislative power, but only where the action amounts to an abuse of discretion as a matter of law because it is so palpably unreasonable and arbitrary." (*Ibid.*)

CRPC contends that its Third Amended Complaint alleges a cause of action for traditional mandamus under two theories: (1) the City Council failed to comply with the ministerial requirement in section 6234 that it "hear and pass upon" all public objections to the franchise, and (2) the City Council abused its discretion in denying its franchise application.

With respect to the first ground, CRPC argues that "[t]he City Council's obligation to 'hear and pass upon' the public protests means it was required to do more than simply consider the protests; it was required to decide, determine, and rule on the protests." CRPC cites to the allegation in its Third Amended Complaint that the City Council heard public protests but

14

"did not make any findings to indicate the evidence or basis on which it based its denial."

Initially, the City Council argues that CRPC's claim for traditional mandamus did not expressly allege the violation of a ministerial duty to which CRPC had a right to performance. CRPC acknowledges that it "did not use the phrase 'hear and pass upon' in the Third Amended Complaint," but asserts that it may nonetheless raise "a new cause of action that arises from the complaint's allegations." Given that leave to amend should be liberally granted, we briefly consider CRPC's argument on the merits. In this regard, the City Council argues, "even if the [Third Amended Complaint] supported CRPC's new theory—which it does not—CRPC has not and cannot establish the Franchise Act actually creates any 'ministerial duty' for the City to 'pass upon' protests in a particular manner."

A "ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists." (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 501.) Where a statute " ' "clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion." ' " (*Bullis Charter Sch. v. Los Altos Sch. Dist.* (2011) 200 Cal.App.4th 296, 309.) Whether the City Council had a ministerial duty to "pass upon" the public protests is a question of statutory interpretation and subject to our de novo review. (*Rodriguez v. Solis, supra,* 1 Cal.App.4th 495, 502.)

CRPC argues that "[t]he Franchise Act requires the City Council to act in a prescribed manner and leaves no discretion to the City Council—the

15

legislative body '*shall* proceed to hear and pass upon all protests so made.' "
As the City Council asserts, however, the Third Amended Complaint "does
not allege the City was required to make any formal findings supporting its
decision—nor could it, as this is not required under the Franchise Act." (See
*Walker v. City of San Clemente* (2015) 239 Cal.App.4th 1350, 1369
["[S]ection 1085 does not require an agency to make findings to support its
legislative and quasi-legislative decisions unless another statute specifically
requires findings"].) Construing the phrase "pass upon" to require that the
legislative body make express findings as to the merits of each objection
before denying a franchise would require us to rewrite the statute. Under
section 6234, the legislative body need only "determine" that the protests are
"insufficient" or "overrule or deny" the protests before *granting* a franchise.
The statute is silent as to the duties of the legislative body before it denies a
franchise. Requiring findings before denying the application also would be
inconsistent with the authority granted the City Council under section 6232
to deny the application without public hearing. So, while the phrase "hear
and pass upon" in this context may be interpreted broadly to require the City
Council to consider and decide the protests (see, e.g., *Hill RHF Housing
Partners, L.P. v. City of Los Angeles* (2021) 12 Cal.5th 458, 490 (*Hill*) ["hear
and pass upon" as used in different statute required the "local boards to 'pass
upon' objections [citations], not just 'consider' protests"]), it does not require
that the City Council issue findings in support of its decision or otherwise
impose a ministerial duty as to how that decision is expressed.[2]

_____

[2] CRPC's reliance on *Hill, supra,* 12 Cal.5th 458 for the proposition that
the language "pass upon" as used in the Franchise Act required the City
Council to act on the protests in a specific manner is misplaced. In that case,
the court held that petitioners were not required to present their

16

Absent factual allegations to the contrary, the City Council is entitled to a presumption that it determined the merits of the protests before denying the application. (Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"]; see *City of Sacramento v. State Water Resources Control Bd.* (1992) 2 Cal.App.4th 960, 976 ["the relevant inquiry here is not whether the record establishes compliance but whether the record contains evidence [the board] *failed* to comply with the requirements of its . . . regulatory program" and, "[i]n the absence of contrary evidence, we presume regular performance of official duty"].) The allegations of the Third Amended Complaint fail to overcome that presumption. Indeed, the notice of termination that was attached to the Third Amended Complaint specifically states that the City Council made its decision to deny the franchise extension "based on extensive public comment." As such, CRPC has not alleged facts showing that the City Council violated any alleged ministerial duty to "pass upon" the protests. As such, we turn to CRPC's argument that the City Council abused its discretion in relying on the protests to deny the franchise application.

---

Proposition 218 (Cal. Const., art. XIIIC & XIIID) objections at public hearings before the local board for these arguments to later be heard on the merits in court. (*Hill*, 12 Cal.5th at pp. 472–473.) In so holding, the Court distinguished two cases, *Wallich's Ranch Co. v. Kern County Citrus Pest Control Dist.* (2001) 87 Cal.App.4th 878 and *People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, on ground that the statutes at issue in those cases required the "local boards to 'pass upon' objections [citations], not just 'consider' protests." (*Hill*, 12 Cal.5th at p. 490.) Putting aside that the relevant question in all of these cases was exhaustion, not the existence of a ministerial duty, nothing in *Hill* suggests that the language "pass upon" requires the local boards to rule on the merits of the protests in some specific manner.

As set forth above, mandamus may only be used to correct the exercise of discretionary power "where the action amounts to an abuse of discretion as a matter of law because it is so palpably unreasonable and arbitrary." (*Coachella Valley Unified School Dist. v. State of California*, *supra*, 176 Cal.App.4th at p. 113.) " 'When a court reviews a public entit[y's] decision for an abuse of discretion, the court may not substitute its judgment for that of the public entity, and if reasonable minds may disagree as to the wisdom of the public entity's discretionary determination, that decision must be upheld.' " (*CV Amalgamated LLC v. City of Chula Vista* (2022) 82 Cal.App.5th 265, 280.)

CRPC argues that it alleged specific facts establishing that "the City Council either denied the pipeline franchise application for no reason or one that is unreasonable, arbitrary, capricious, or factually unsupported and unsubstantiated." CRPC relies on allegations in the Third Amended Complaint that "there was no evidence the pipeline was unsafe, failed to meet the federal Pipeline Safety Act, or was operated in a similar manner to pipelines that had suffered accidents; the City has no policy prohibiting the use or transportation of natural gas in or through the City; the City historically authorized franchises for hydrocarbon pipelines governed by nearly identical conditions, and the terms of the City's standard franchise agreement had not changed; and there were no changes in local or state law or policy regarding the franchising of new or existing pipelines that would vary the City's historic approval of natural gas pipelines and natural gas use." It also cites allegations that there was no evidence connecting the generalized concerns of environmental justice, natural gas pipeline safety, and climate change discussed at the hearing to CRPC or the Union Island Pipeline.

18

Initially, we note that the existence of other pipeline franchises and the absence of a policy prohibiting the transportation of natural gas in or through the City does not necessarily establish an abuse of discretion in this case. As discussed above, the significant differences regarding the City's prior approval of various franchises, primarily involving when they were approved and what substances they transported, preclude drawing any inference that the City Council's denial of CRPC's extension application was arbitrary based solely on the alleged different treatment. Nor does the absence of any established policy by the City regarding hydrocarbon pipelines establish that the City Council's decision was wholly irrational.

We also disagree that the City Council's reliance on generalized concerns expressed by protestors regarding environmental justice, natural gas pipeline safety, and climate change, if proven, would establish an abuse of discretion. In this regard, the Third Amended Complaint alleges, "When given an opportunity to comment, Councilmember Torres-Walker discussed environmental injustices, including how 'oil, coal, [and] major polluters to our air, our water, and our land are never held accountable.' Councilmember Torres-Walker also highlighted the dangers of pipelines generally and cited the need to transition away from fossil fuels as the reason for her 'no' vote." Councilmember Wilson also "indicated she would be voting 'no' because of unstated and unspecified potential safety issues and the City's desire to promote a clean and sustainable community that is less reliant on natural gas." Initially we note, as the trial court did, that in traditional mandamus proceedings, when evaluating whether the decision of the legislative body was palpably unreasonable or arbitrary, the underlying motive or thought processes of individual councilmembers are not relevant. (*Mike Moore's 24-Hour Towing v. City of San Diego* (1996) 45 Cal.App.4th 1294, 1305.) In any

19

event, the City Council was not, as CRPC suggests, required to tie the protestor's "generalized environmental justice, safety, and climate change concerns" to the safety or operational records of the Union Island Pipeline or CRPC in order to be considered a rational basis for its decision.

In conclusion, the factual allegations in the complaint, if proven, simply do not establish that the decision to deny the franchise extension application was arbitrary and irrational. CRPC's contention that the trial court abused its discretion in denying it leave to amend extends only to its argument, rejected above, that the Franchise Act imposed a ministerial duty on the City Council to "pass upon" the public protests. Accordingly, the trial court properly sustained the City's demurrer without leave to amend.

## VI.    Regulatory Taking

Pursuant to the Takings Clause of the Fifth Amendment, "private property [shall not] be taken for public use, without just compensation." (U.S. Const., 5th Amend.; see also *Chicago, Burlington & Quincy R.R. Co. v. City of Chicago* (1897) 166 U.S. 226, 239 [Takings Clause applies to the states through the Due Process Clause of the Fourteenth Amendment].) "A regulatory taking occurs when government regulation of private property is so onerous that it is 'tantamount to a direct appropriation or ouster.'" (*York v. City of Los Angeles* (2019) 33 Cal.App.5th 1178, 1193.)

In the Second Amended Complaint, CRPC alleged that it owns the 8.5 miles of the Union Island Pipeline within the City's right-of-way, as well as the rest of the pipeline, and that the City's action prohibited the use of the pipeline within the City's right-of-way and elsewhere to prevent injury to the public, thereby depriving the pipeline of all or substantially all economically viable use.

20

The trial court concluded that the City Council's action in this case—denying the franchise extension—was not a regulatory action. The trial court explained, "In point of fact, the action at issue is the *failure* of the City to issue an ordinance granting Plaintiff an extension of the Franchise. Such action does not amount to 'regulatory action.' " CRPC challenges that conclusion on appeal arguing that "the City regulat[ed] the public right-of-way through its franchise authority to prohibit the use of private property." We tend to agree with the trial court but need not decide whether the City's decision constituted a "regulatory action" because CRPC has not alleged and cannot allege that it has a protected interest in the property it claims was regulated—the City's right-of-way—or the private property located within it—the pipeline.

We do not disagree that " ' "[a] private utility's franchise in a public street is property created by contract" ' " and that "[a]s property, a franchise cannot be taken for public use without compensation." (*Riverside County Transportation Com. v. Southern California Gas Co.*, *supra,* 54 Cal.App.5th 823, 857.) The franchise here, however, expired, and CRPC had no right, contractual or otherwise, to the extension of the franchise. While we do not doubt that significant economic impacts were caused by the City Council's decision not to extend the franchise, CRPC did not have a protected property interest that was taken for public use by the denial of the franchise extension.

*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517 is instructive. *Handlery* involved a hotel which had a lease of adjoining premises for use as a golf course. After the lease expired, and while the parties were negotiating a possible new lease, a portion of the golf course was condemned for a public transportation

extension. When the hotel sued the city for inverse condemnation, the trial court found that the hotel was not entitled to compensation. On appeal, the court affirmed, rejecting the hotel's claim that it was losing a compensable interest in its former leasehold. The "fatal flaw" in the hotel's claim was that "it lost no compensable property right. A hypothetical future lease resting on the 'probability of renewal,' unlike a contractual option to renew an existing lease, is not a compensable property right [citation], because its potential execution rests upon the commercial vagaries of the market, its players and their competitive interests. . . . A tenant's right of renewal of a lease refers to a legal right, and this exists only when the lease expressly grants to the tenant the option to renew the lease at the end of its term. A mere expectation, or even probability, that the lease will be renewed based upon past practice and present good relations between landlord and tenant, is not a legal right of renewal. It is nothing more than a speculation on chance. Intentions which are subject to change at the will of a landlord do not constitute an interest in land so as to confer upon the tenants something to be valued and compensated for in a condemnation action." (*Id.* at pp. 531–532.) Similarly here, the Third Amended Complaint does not allege that CRPC had a contractual or statutory right to an extension of its franchise. Accordingly, CRPC cannot allege that it has a property interest in the franchise extension or continued use of City property.

The Second Amended Complaint alleges that CRPC's property interests include "not only the long-standing franchise agreement itself, but CRPC's property rights in the entirety of the 35-mile long Union Island Pipeline, as well as mineral interests and oil and gas leases." On appeal, CRPC emphasizes that it holds "fee title to the 8.5-mile segment of the Union Island Pipeline that lies in the City's rights-of-way." But the Franchise Agreement

22

attached to the Second Amended Complaint provides that ownership of the portion of the pipeline located on City land vests in the City once CRPC abandons the Pipeline, and the Second Amended Complaint alleges that "CRPC was ordered to take immediate actions to discontinue the use of and abandon all pipelines within the City's jurisdiction." The Second Amended Complaint alleges that CRPC sought and was granted several delays regarding the timing of abandonment, but does not challenge the City's authority to order the pipeline abandoned upon termination of the franchise. Accordingly, CRPC had no protected interest in the physical pipeline absent an enforceable franchise agreement. Any restriction on CRPC's ability to use the remainder of the pipeline or on CRPC's business as a whole is also not compensable absent a right to use the pipeline located in the City's right-of-way.

Because CRPC cannot allege that it has a right to use the pipeline in the City's property, it cannot establish a right to compensation under the Takings clause. Accordingly, the trial court properly sustained the demurrer to this cause of action without leave to amend.

## VII.  Extraterritoriality and Preemption

CRPC contends that the trial court erred by sustaining the City's demurrer to the first two causes of action in its First Amended Complaint alleging that the City's action in denying the extension of the franchise agreement was an impermissible extraterritorial act, in violation of article XI, section 7 of the California Constitution and that the City's action was preempted under state and federal law.

### A.  Extraterritoriality

Under article X1, section 7, of the California Constitution, a "county or city may make and enforce within its limits all local, police, sanitary, and

23

other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.)  The California Supreme Court has interpreted this provision as prohibiting a municipal corporation from " 'exercis[ing] its *governmental functions* beyond its corporate boundaries.' " (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1175; *City of Los Angeles v. Shell Oil Co.* (1971) 4 Cal.3d 108, 120, fn. 7 ["This provision has been held to forbid extraterritorial application of local ordinances"].)

CRPC's First Amended Complaint alleged that "[t]he City's action in denying the extension of the franchise agreement is an impermissible extraterritorial act, in violation of article XI, section 7 of the California Constitution because it damages persons and businesses outside the City, particularly in San Joaquin County and Richmond, California."  The complaint explains, "The City Council, in denying an extension of the franchise agreement, is prohibiting CRPC from transporting natural gas through the segment of the Union Island Pipeline within the City's public right-of-way. Given the linear nature of natural gas pipelines, and the Union Island Pipeline's and the Fields' lack of interconnection with other pipelines, the City Council's decision also prohibits the transport of natural gas along the entirety of the Union Island Pipeline's 35-mile route and the production of natural gas from the San Joaquin Fields.  The City's action seeks to regulate the entirety of the Union Island Pipeline, the majority of which is outside the City's limits, as well as the Fields, which are entirely outside the City's boundaries and jurisdiction."

The City contends that the demurrer was properly sustained without leave to amend because it was exercising its contracting authority, which is not subject to the constitutional limitation.  (See *Burns Internat. Security Services Corp. v. County of Los Angeles* (2004) 123 Cal.App.4th 162, 168 ["It is

24

clear from its language and from the cases interpreting it that article 11, section 7 [of the California Constitution] applies only where the local authority exercises its regulatory or police power as opposed to its contracting power"].)  We agree that what CRPC alleges is not extraterritorial regulation but an "incidental impact" of the City's contracting decision, which is not prohibited by the California Constitution.  (*Id.* at p. 176 ["incidental impact that results from an entity's legitimate exercise of its contracting authority" is permitted under the California Constitution]; *Air Transport Association of America v. City and County of San Francisco* (N.D.Cal. 1998) 992 F.Supp. 1149, 1159 ["extraterritorial effects" of ordinance imposing conditions on those who may enter into airport-related contracts did not establish that the city acted beyond its powers under the California Constitution].)  Accordingly, the trial court correctly concluded that the First Amended Complaint did not allege a cause of action under article XI, section 7 of the California Constitution.

## B.     Preemption

Local legislation may be preempted by federal law under the supremacy clause of the United States Constitution.  (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 935.)  Federal preemption applies either (a) when a federal law expressly declares it is preempting local law; (b) when it would be impossible to comply with both federal and local law; (c) when local law would stand as an obstacle to the fulfillment of the purposes and objectives of federal law; or (d) when Congress manifests its intent to preempt all local law in a particular area. (*Id.* at p. 936.)  Similarly, local legislation may be preempted if it conflicts with state law, pursuant to article XI, section 7 of the California Constitution.  (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th

25

893, 897.) " 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' " (*Ibid.*)

The first cause of action of CRPC's First Amended Complaint alleges that "[t]he City Council's decision not to extend the franchise agreement on the basis of climate change concerns is . . . preempted under article XI, section 7 of the California Constitution" because it "conflict[s] with state law and policy to maintain natural gas as an energy resource." The second cause of action alleges: "The City's actions are preempted under the supremacy clause of the United States Constitution, as they are in conflict with, and expressly preempted by, existing federal law and regulations set in place to regulate the placement, use, and safety of natural gas pipelines." Here, the action allegedly preempted is the City's "reject[ion of] the Union Island Pipeline franchise extension because it does not meet some other undefined or implied higher standard of safety over and above compliance with the [Hazardous Liquid Pipeline Safety Act, 49 U.S.C. § 60101 et seq.]."

The City argues correctly that CRPC's preemption claims fail because CRPC did not identify any regulatory action taken by the City that could be preempted. The City's denial of CRPC's franchise application did not regulate or attempt to regulate natural gas usage or pipeline safety in any manner. CRPC's argument to the contrary is not persuasive.

CRPC argues that "the City Council's denial of the pipeline franchise because the Union Island Pipeline purportedly did not meet the City's own unstated standards for safety and promoted climate change is no different than the City enforcing more stringent pipeline safety or protective environmental provisions than federal or state law allows." The authority cited by CRPC does not support this claim. In *Olympic Pipe Line v. City of*

26

*Seattle* (9th Cir. 2006) 437 F.3d 872, 880–881, the court held that the imposition of additional safety standards or measures as conditions of the granting of franchise renewals was preempted by federal law governing pipeline safety. Similarly, in *Golden State Transit Corp. v. City of Los Angeles* (1986) 475 U.S. 608, 619, the Supreme Court held that the city's action in conditioning franchise renewal on settlement of labor dispute was preempted by the National Labor Relations Act. The Court emphasized, "Our holding does not require a city to renew or to refuse to renew any particular franchise. We hold only that a city cannot condition a franchise renewal in a way that intrudes into the collective-bargaining process." (*Ibid.*) Here, the City did not condition the franchise renewal in any way. It merely denied the extension.

*Ogden Environmental Services v. City of San Diego* (S.D.Cal. 1988) 687 F.Supp. 1436 is also distinguishable. In that case, after the plaintiff obtained a permit from the federal government to conduct hazardous waste incineration testing in San Diego, the city enacted an ordinance requiring the plaintiff to obtain a conditional use permit for its facility and then denied the permit on the basis of generalized safety concerns. (*Id.* at pp. 1438–1440, 1447–1448.) On plaintiff's claim that the city's action was preempted, the court held that, while the ordinance was not preempted, the "denial of the permit based on generalized environmental or health and safety concerns, where the [federal government] has already found the health, safety, and environmental risks to be acceptable, is impermissible under the doctrine of federal preemption." (*Id.* at p. 1448.) In reaching that conclusion, however, the court relied on the objectives of two federal programs to conclude that the city's denial of a conditional use permit stood as an obstacle. Here, the City is under no obligation to extend the franchise for the use of its property

27

merely because the pipeline meets federal safety standards, and nothing in the City's decision conflicts with federal law or frustrates its objectives. Nor has CRPC alleged that any state law requires the City to extend CRPC's franchise in furtherance of state goals regarding natural gas usage.

Accordingly, we find no error in the order sustaining without leave to amend the first and second causes of action of the First Amended Complaint.

**VIII.    Declaratory Relief**

The trial court dismissed CRPC's request for declaratory relief for the same reasons it dismissed CRPC's causes of action for traditional mandamus and violation of equal protection. Because we affirm the trial court's order as to those causes of action, we find no error in the trial court's order regarding CRPC's "derivative request for declaratory relief."

**DISPOSITION**

The judgment entered in favor of the City Council is affirmed. The petition for writ of mandate filed by CRPC is denied.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.        DOUGLAS, J. *

---

* Judge of the Superior Court of Contra Costa County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CALIFORNIA RESOURCES PRODUCTION CORPORATION, <br>     Plaintiff and Appellant, <br> v. <br> ANTIOCH CITY COUNCIL et al., <br>     Defendants and Respondents. | A168517 <br><br> (Contra Costa County <br> Super. Ct. No. MSN21-2354) |
| CALIFORNIA RESOURCES PRODUCTION CORPORATION, <br>     Petitioner, <br> v. <br><br> THE SUPERIOR COURT OF CONTRA COSTA COUNTY, <br>     Respondent; <br><br> CITY OF ANTIOCH et al., <br>     Real Parties in Interest. | A168558 <br><br> (Contra Costa County <br> Super. Ct. No. MSN21-2354) <br><br><br> ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PARTIAL PUBLICATION; NO CHANGE IN JUDGMENT |

    BY THE COURT*:

The court orders that the opinion filed in this appeal on November 19, 2024, be modified as follows:

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts VI, VII and VIII.

* Streeter, Acting P. J., Goldman, J., Douglas, J. (Judge of the Superior Court of California, Contra Costa County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution).

1. On page 17, in the last sentence of the first paragraph, remove the words "As such, we" and replace them with "We therefore" so the sentence reads:

> We therefore turn to CRPC's argument that the City Council abused its discretion in relying on the protests to deny the franchise application.

There is no change in the judgment.

The opinion in the above-entitled matter filed on November 19, 2024, was not certified for publication in the Official Reports. On December 9, 2024, respondent the City of Antioch filed a request that the opinion be published. For good cause it now appears that the opinion should be certified for partial publication in the Official Reports, and it is so ordered with the exception of parts VI, VII and VIII.


Dated: December 18, 2024                    STREETER, Acting P. J.

2

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Honorable Edward G. Weil |
| Counsel for Plaintiffs and Appellants / Petitioner California Resources Production Corporation: | STOEL RIVES, Michael N. Mills, Allison C. Smith, Heraclio Pimentel, Kelly V. Beskin |
| Counsel for Defendants and Respondents / Real Parties in Interest City of Antioch and Antioch City Council: | MEYERS NAVE, David Mehretu, Catherine L. Carlisle THOMAS LLOYD SMITH, City Attorney for City of Antioch |